UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| LAURA R. KACZMAREK, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Cause No. 1:14-cv-231 |
| | ) |
| CAROLYN W. COLVIN, | ) |
| Acting Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

**OPINION AND ORDER**

This matter is before the court on petition for judicial review of the decision of the Commissioner filed by the plaintiff, Laura R. Kaczmarek, on August 4, 2014. For the following reasons, the decision of the Commissioner is **REMANDED**.

*Background*

The plaintiff, Laura R. Kaczmarek, filed an application for Disability Insurance Benefits and Supplemental Security Income on June 13, 2011, alleging a disability onset date of July 14, 2008. (Tr. 11). The Disability Determination Bureau denied Kaczmarek's application on September 13, 2011, and again upon reconsideration on November 22, 2011. (Tr. 134–37). Kaczmarek subsequently filed a timely request for a hearing on December 21, 2011. (Tr. 11). A hearing was held on January 2, 2013, before Administrative Law Judge (ALJ) William D. Pierson, and the ALJ issued an unfavorable decision on May 14, 2013. (Tr. 11, 24). Vocational Expert (VE) Marie Kieffer, Cayla Kaczmarek, Kaczmarek's daughter, and Kaczmarek testified at the hearing. (Tr. 11). The Appeals Council denied review, making the ALJ's decision the final decision of the Commissioner. (Tr. 1–6).

The ALJ determined that Kaczmarek met the insured status requirements of the Social Security Act through December 31, 2013. (Tr. 13). At step one of the five step sequential analysis for determining whether an individual is disabled, the ALJ found that Kaczmarek had not engaged in substantial gainful activity since July 14, 2008, her alleged onset date. (Tr. 13). At step two, the ALJ determined that Kaczmarek had the following severe impairments: mild osteoarthritis of the hips, low-grade injuries of ACL and MCL of the knees, left shoulder problems, degenerative disc disease, facet arthropathy, and spondylosis. (Tr. 14). Also at step two, the ALJ stated that Kaczmarek did not suffer from a severe mental impairment. (Tr. 15). At step three, the ALJ concluded that Kaczmarek did not have an impairment or combination of impairments that met or medically equals the severity of one of the listed impairments. (Tr. 15).

The ALJ then assessed Kaczmarek's residual functional capacity as follows:

> the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) (lifting and carrying 20 pounds occasionally and 10 pounds frequently and sitting or standing/walking for a total of 6 hours each in an eight-hour period) except that she is not able to climb ladders, ropes, or scaffolds at all and she can occasionally kneel, crouch, crawl, and climb ramps and stairs (1-2 flights with handrails). She can occasionally bend and stoop in addition to what is needed to sit.

(Tr. 15). The ALJ explained that in considering Kaczmarek's symptoms he followed a two-step process. (Tr. 16). First, he determined whether there was an underlying medically determinable physical or mental impairment that was shown by a medically acceptable clinical or laboratory diagnostic technique that reasonably could be expected to produce Kaczmarek's pain or other symptoms. (Tr. 16). Then, he evaluated the intensity, persistence, and limiting effects of the symptoms to determine the extent to which they limited Kaczmarek's functioning. (Tr. 16).

Kaczmarek testified that she had constant pain in her upper back and hips. (Tr. 16). She described the pain as a "7" or "8" out of ten without medication and a "6" with medication. (Tr.

2

16). Additionally, she claimed that she could stand for one hour at a time with significant shifting, could lift twenty pounds, could walk for ten minutes at a time, and could sit for one hour at a time with significant shifting. (Tr. 16). Furthermore, Kaczmarek alleged difficulty sleeping due to pain, drowsiness with medication, left shoulder problems, and that using her arms caused upper back and hip pain. (Tr. 16). She also noted difficulty bending, reaching, and squatting, that her hands became numb, she could not write, use a keyboard, or hold a book for extended periods of time, frequent stiffness, daily naps, and fatigue. (Tr. 16). Moreover, Kaczmarek alleged that she must rest during chores and that she had a day were she could not do anything. (Tr. 16). Her daughter, Cayla, confirmed that Kaczmarek rested during chores and indicated that she hunched while walking and complained about aches and pains. (Tr. 16). The ALJ found the above allegations incredible regarding the intensity, persistence, and limiting effects of Kaczmarek's symptoms. (Tr. 16).

The ALJ noted that Kaczmarek's physical examinations were usually within normal limits. (Tr. 16). However, she did have some decreased range of motion and tenderness, among other issues. (Tr. 16–17). Multiple medical sources found that Kaczmarek did not have any physical impairments or limitations, including the State Agency physicians, Dr. Gasdorf, Kazcmarek's chiropractor, and Dr. Alley, her former primary care physician. (Tr. 17). However, the ALJ concluded that she had severe problems with her spine, left shoulder, hips, and knees. (Tr. 17). The ALJ noted that Kaczmarek took many medications, used a heating pad, underwent left shoulder surgery, physical therapy, and chiropractic treatment, and received numerous pain and steroid injections. (Tr. 17).

In August 2011, Dr. Kamineni examined Kaczmarek and concluded that she could sit for only thirty minutes, stand for thirty minutes with difficultly, lift less than ten pounds, carry ten

3

pounds, and walk for six minutes at a time. (Tr. 17). In 2008, Dr. Gasdorf found that she could lift less than ten pounds, could not sit or stand for extended periods, could not climb more than five steps at a time, could not bend or twist repetitively, and could not walk for a short period of time. (Tr. 17). The ALJ gave little weight to either opinion because the physicians were not specifically trained to evaluate disability for the SSA, were not orthopedic specialists, and their opinions were not supported by the objective medical evidence. (Tr. 17). Additionally, Dr. Kamineni did not treat Kaczmarek and only examined her once. (Tr. 17). The ALJ also noted that the evidence did not demonstrate any muscle atrophy, significant deficits in muscle strength, reflexes, or sensation, or that she needed to use an assistive device to ambulate. (Tr. 17).

The ALJ found Kaczmarek incredible because she alleged disability in July 2008 but received unemployment compensation payments in 2010. (Tr. 18). To receive unemployment compensation, Kaczmarek had to inform the state that could work if she could find a job. (Tr. 18). Additionally, Kaczmarek applied for worker's compensation payments and worked part-time after the alleged onset date. (Tr. 18). Although her part-time work did not exceed the substantial gainful activity limit, the ALJ found it inconsistent with the level of limitation Kaczmarek alleged. (Tr. 18). The ALJ also found Kaczmarek incredible because she was convicted and imprisoned for dealing methamphetamines from 2002 through 2004 and for possessing stolen property from February 2012 through November 2012. (Tr. 18).

The ALJ noted that Kaczmarek had not had any surgeries since her alleged onset date, except for left shoulder surgery in December 2010. (Tr. 18). Despite having surgery, her orthopedic surgeon, Dr. Hamlet, indicated that her shoulder was doing well in February 2011. (Tr. 18). Additionally, Kaczmarek testified that she did not have any medication side effects currently but that she felt drowsy when she took Opana. (Tr. 18). However, the ALJ indicated

4

that no physicians in the record found that Kaczmarek had persistent or adverse side effects from prescribed medication. (Tr. 18).

Furthermore, the ALJ found that the objective medical evidence did not support Kaczmarek's or her daughter's claims. (Tr. 18). For example, the record did not indicate any atrophy, significant loss of tone, or use of a cane or other assistive device. (Tr. 18). In July 2008, Dr. Shugart found that Kaczmarek did not need surgery and recommended lighter work and a few weeks off. (Tr. 18). His treatment notes reflected an epidural steroid injection between July and September 2008 but also suggested few supportive objective medical findings, despite many subjective complaints. (Tr. 18). Dr. Alley's treatment notes from November 2008 indicated no abnormal neurological movement, tremors, or apparent distress and normal reflexes, mood, and affect. (Tr. 18). Additionally, Kaczmarek was capable of normal physical activities without restriction. (Tr. 18). During thoracic epidurals in January and May 2009, Kaczmarek's musculoskeletal, neurological, and extremity exams were normal. (Tr. 18). However, her back was abnormal, but Dr. Alley did not report any specific abnormal findings. (Tr. 18).

In May and July 2009, Kaczmarek complained of pain to Dr. Bojrab, but testing revealed no mild, minimal, or moderate findings. (Tr. 19). Additionally, a spinal examination revealed no pain to palpation of the cervical spine and no pain during extension of the lumbar flexors. (Tr. 19). Kaczmarek also had good neck motion, mild thoracic and rib tenderness, and moderate tenderness in the midline lumbar area. (Tr. 19). Moreover, she had left shoulder and hip bursa pain but no pain during spinal palpation. (Tr. 19). In April 2010, Dr. Gasdorf found no limitations regarding sitting, standing, walking, lifting, carrying, or handling. (Tr. 19). From March through June 2010, Dr. Hedrick noted complaints of severe pain and tenderness but also documented appropriate mood and affect, attention to hygiene and body habitus, no significant

5

asymmetry, 5/5 extremity strength, negative straight leg raises, normal hip and pelvis exams, and intact tandem, heel, and toe gaits. (Tr. 19).

In August 2010, Kaczmarek alleged pain levels as high as 10/10, but her pain was well controlled and her medication was effective. (Tr. 19). In September 2010, Kaczmarek reported many points of tenderness, but every physical test of her lumbar spine and sacroiliac joints were normal and she had no gait or sensation deficits. (Tr. 19). Medical sources reported effective medication without side effects and normal sensation, strength, gait, and mood throughout 2011. (Tr. 19). Therefore, the ALJ found Kaczmarek's complaints of disabling pain incredible. (Tr. 19).

The ALJ gave Dr. Kamineni's opinion little weight because his assigned function limitations were inconsistent with the record, including his medical findings and impressions. (Tr. 19). The ALJ noted that Kaczmarek reported significant pain to Dr. Kamineni while also reporting an ability to perform daily living activities. (Tr. 19). Dr. Kamineni assigned many functional limitations, but the ALJ indicated that Kaczmarek had no muscle weakness, muscle pains, joint tenderness, or joint crepitus. (Tr. 19). Additionally, she had an appropriate mood and affect, her thought content was normal, her gait was stable, and her deep tendon reflexes were brisk and symmetrical. (Tr. 19). The ALJ further noted that Dr. Kamineni assigned backache and osteoarthritis but failed to identify any specifics. (Tr. 19).

In September 2011, Dr. Sands found that Kaczmarek did not have a severe impairment. (Tr. 19). Additionally, he noted that she had no gross motor deficits, weakness, spasm, or muscle pains. (Tr. 19–20). Dr. Sands also indicated that she had a normal gait and joint motion. (Tr. 20). Therefore, the ALJ concluded that Dr. Sands' opinion did not support Kaczmarek's claims. (Tr. 20).

In January 2012, Kaczmarek reported pain as high as 10/10 to Dr. Hedrick, but she also stated that her medications were working, unless the weather was bad. (Tr. 20). At that time, she had no significant sensory deficits, normal gait, 5/5 extremity strength, and 2/4 deep tendon reflexes. (Tr. 20). In February 2012, Kaczmarek reported significant medication use without any side effects. (Tr. 20). Dr. Hedrick then made similar objective medical findings. (Tr. 20). In January 2013, she reported high pain levels because she had not used pain medication since her release from incarceration, but she denied fatigue or weakness. (Tr. 20). Also at that time, she had intact sensation, normal gait without ataxia, and equal reflexes. (Tr. 20). However, Kaczmarek had decreased grip strength, but the ALJ did not find any significant worsening or an onset of a condition from prior findings of full strength. (Tr. 20). Moreover, Kaczmarek had no lumbar facet tenderness, no pain with lumbar flexion, and no sacroiliac tenderness, but she did portray trapezius, rhomboid, and thoracic tenderness. (Tr. 20). The ALJ noted that Kaczmarek was not considered an appropriate candidate for opiates because of possible opioid addiction or dependence. (Tr. 20). The ALJ found that the above evidence undermined Kaczmarek's allegations because there were inconsistencies between the objective medical evidence and her complaints and she indicated that her medications improved her symptoms. (Tr. 20).

The Department of Corrections concluded that Kaczmarek could work in the kitchen in 2012. (Tr. 20). Additionally, Faith Community's treatment notes reflected few objective medical findings, despite many complaints. (Tr. 20). The ALJ found that the above facts failed to support Kaczmarek's claims. (Tr. 20). The pain center reported that Kaczmarek had sleep deprivation, but the ALJ did not find any support for sleep deprivation in the medical treatment records. (Tr. 20).

The ALJ indicated that July 2008 x-rays of Kaczmarek's knees were negative, except for minimal joint space narrowing in her right knee. (Tr. 20). However, an October 2008 MRI showed acute low-grade injuries in both knees to her ligaments and joints. (Tr. 20–21). A July 2009 hip x-ray revealed mild degenerative changes. (Tr. 20). A July 2009 left shoulder x-ray was negative, but a September 2010 MRI revealed a supraspinatus tendon tear and mild degenerative changes. (Tr. 21). A July 2008 MRI showed degenerative disc disease through the mid thoracic spine and stenosis at multiple discs. (Tr. 21). The ALJ stated that Kaczmarek was diagnosed with thoracic radiculitis and lumbar radiculopathy but that neither included loss of sensation, atrophy, or grip within her extremities. (Tr. 21).

The ALJ noted that Kaczmarek was not prescribed an assistive device for ambulation, motion, or immobilization for twelve consecutive months, since the alleged onset date. (Tr. 21). Additionally, he indicated the lack of any atrophy or loss of muscle tone, despite Kaczmarek's allegations of severe pain that would preclude even sedentary work. (Tr. 21). Kaczmarek did not report acute distress, and the record did not support significant pain behaviors or signs such as uncomfortable movement, abnormal breathing, or elevated blood pressure. (Tr. 21). Rather, the ALJ indicated that Kaczmarek could spend time with her grandchildren, do laundry, cook, clean, care for her personal needs, play computer games, and read. (Tr. 21–22). Finally, the ALJ considered Kaczmarek's earnings record from 2004 through 2008, which did not reflect a steady work history. (Tr. 22). Considering the above evidence, the ALJ did not find Kaczmarek credible. (Tr. 22).

At step four, the ALJ determined that Kaczmarek could perform some of her past relevant work. (Tr. 22). The ALJ concluded that she could not perform her past relevant work as a sales clerk, fiberglass finisher, or shipping and receiving clerk. (Tr. 22). However,

Kaczmarek could perform her past relevant work as a fast food worker. (Tr. 22). Additionally, the ALJ determined that she could perform other jobs in the national economy. (Tr. 22). Considering Kaczmarek's age, education, work experience, and RFC, the ALJ concluded that there were jobs in the national economy that she could perform, including cashier (2,500 jobs regionally, 30,000 jobs in Indiana, and 1,000,000 jobs nationally), small products assembler (2,000 jobs regionally, 30,000 jobs in Indiana, and 700,000 jobs nationally), and cleaner (500 jobs regionally, 2,200 jobs in Indiana, and 135,000 jobs nationally). (Tr. 23).

*Discussion*

The standard for judicial review of an ALJ's finding that a claimant is not disabled within the meaning of the Social Security Act is limited to a determination of whether those findings are supported by substantial evidence. **42 U.S.C. § 405(g)** ("The findings of the Commissioner of Social Security, as to any fact, if supported by substantial evidence, shall be conclusive."); *Moore v. Colvin*, 743 F.3d 1118, 1120–21 (7th Cir. 2014); *Bates v. Colvin*, 736 F.3d 1093, 1097 (7th Cir. 2013) ("We will uphold the Commissioner's final decision if the ALJ applied the correct legal standards and supported her decision with substantial evidence."); *Pepper v. Colvin*, 712 F.3d 351, 361–62 (7th Cir. 2013); *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005); *Lopez ex rel Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003). Substantial evidence has been defined as "such relevant evidence as a reasonable mind might accept to support such a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed. 2d 852 (1972) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S. Ct. 206, 217, 83 L. Ed. 2d 140 (1938)); *see Bates*, 736 F.3d at 1098; *Pepper*, 712 F.3d at 361–62; *Jens v. Barnhart*, 347 F.3d 209, 212 (7th Cir. 2003); *Sims v. Barnhart*, 309 F.3d 424, 428 (7th Cir. 2002). An ALJ's decision must be affirmed if the findings are supported by substantial evidence and if there have

been no errors of law.  ***Roddy v. Astrue***, 705 F.3d 631, 636 (7th Cir. 2013); ***Rice v. Barnhart***, 384 F.3d 363, 368–69 (7th Cir. 2004); ***Scott v. Barnhart***, 297 F.3d 589, 593 (7th Cir. 2002).  However, "the decision cannot stand if it lacks evidentiary support or an adequate discussion of the issues." ***Lopez***, 336 F.3d at 539.

Disability and supplemental insurance benefits are available only to those individuals who can establish "disability" under the terms of the Social Security Act.  The claimant must show that she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." **42 U.S.C. § 423(d)(1)(A)**.  The Social Security regulations enumerate the five-step sequential evaluation to be followed when determining whether a claimant has met the burden of establishing disability.  **20 C.F.R. §§ 404.1520, 416.920**.  The ALJ first considers whether the claimant is presently employed or "engaged in substantial gainful activity." **20 C.F.R. §§ 404.1520(b), 416.920(b)**.  If she is, the claimant is not disabled and the evaluation process is over.  If she is not, the ALJ next addresses whether the claimant has a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities." **20 C.F.R. §§ 404.1520(c), 416.920(c)**; *see* ***Williams v. Colvin***, 757 F.3d 610, 613 (7th Cir. 2014) (discussing that the ALJ must consider the combined effects of the claimant's impairments).  Third, the ALJ determines whether that severe impairment meets any of the impairments listed in the regulations.  **20 C.F.R. § 401, pt. 404, subpt. P, app. 1**.  If it does, then the impairment is acknowledged by the Commissioner to be conclusively disabling.  However, if the impairment does not so limit the claimant's remaining capabilities, the ALJ reviews the claimant's "residual functional capacity" and the physical and mental demands of

her past work. If, at this fourth step, the claimant can perform her past relevant work, she will be found not disabled. **20 C.F.R. §§ 404.1520(e), 416.920(e)**. However, if the claimant shows that her impairment is so severe that she is unable to engage in her past relevant work, then the burden of proof shifts to the Commissioner to establish that the claimant, in light of her age, education, job experience, and functional capacity to work, is capable of performing other work and that such work exists in the national economy. **42 U.S.C. § 423(d)(2); 20 C.F.R. §§ 404.1520(f), 416.920(f)**.

First, Kaczmarek has argued that the ALJ improperly rejected Dr. Kamineni's opinion. Generally, an ALJ affords more weight to the opinion of an examining source than the opinion of a non-examining source, but the ultimate weight given depends on the opinion's consistency with the objective medical evidence, the quality of the explanation, and the source's specialty. *Givens v. Colvin*, 551 F. App'x 855, 860 (7th Cir. 2013); **20 C.F.R. § 404.1527(c)**. "An ALJ can reject an examining physician's opinion only for reasons supported by substantial evidence in the record; a contradictory opinion of a non-examining physician does not, by itself, suffice." *Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003). An ALJ may give less weight to an examining source's opinion when it appears to rely heavily on the claimant's subjective complaints. *Givens*, 551 F. App'x at 861; *see* **20 C.F.R. § 404.1527(c)(3)** ("The more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight we will give the opinion. The better explanation a source provides for an opinion the more weight we will give that opinion."); *Filus v. Astrue*, 694 F.3d 863, 868 (7th Cir. 2012).

Dr. Kamineni examined Kaczmarek in August 2011 and found physical limitations, including an inability to sit or stand for over thirty minutes, an inability to lift or carry over ten

11

pounds, and an inability to walk for over six minutes. (Tr. 17). The ALJ reviewed Dr. Kamineni's examination and findings but gave his opinion little weight. (Tr. 17, 19). First, he noted that Dr. Kamineni was not an orthopedic specialist or trained specifically to evaluate disability for the SSA. (Tr. 17). Additionally, he noted that Dr. Kamineni examined Kaczmarek only once and that the objective medical evidence, including Dr. Kamineni's medical impressions, did not support his findings. (Tr. 17, 19). For example, despite assigning multiple functional limitations, Dr. Kamineni found that Kaczmarek's gait was stable, her deep tendon reflexes were brisk and symmetrical, her thought content was normal, and her mood and affect were appropriate. (Tr. 19). Additionally, Dr. Kamineni found no muscle weakness or pain, no joint tenderness or crepitus, and normal joint movement. (Tr. 19). Furthermore, the ALJ indicated that Dr. Kamineni did not specify why he concluded that Kaczmarek had osteoarthritis or backache. (Tr. 19).

Kaczmarek has argued that the ALJ relied improperly on Dr. Shugart's opinion to discredit Dr. Kamineni's opinion. She noted that Dr. Shugart issued his opinion before she received multiple injections and underwent surgery. Therefore, she has claimed that his opinion cannot discredit Dr. Kamineni's opinion, which he issued after she underwent the above treatment. Furthermore, she has argued that the ALJ did not reject Dr. Kamineni's opinion with substantial evidence because he did not explain his reasoning sufficiently. For example, she has indicated that the ALJ inconsistently rejected Dr. Kamineni's opinion for examining her a single time while not discrediting other opinions for the same reason.

Although the ALJ did rely on Dr. Shugart's earlier opinion to reject Dr. Kamineni's opinion, he also provided other reasons. He noted that Dr. Kamineni was not an orthopedic specialist or trained to evaluate disability. *See **Givens***, 551 F. App'x at 860 (indicating that the

Commissioner may give an opinion less weight based on the source's specialty).  Additionally, he identified the inconsistencies between Dr. Kamineni's opinion and the objective medical evidence, including Dr. Kamineni's own objective findings.  Furthermore, the ALJ indicated that Dr. Kamineni did not provide a good explanation for his pain findings.  *See* **20 C.F.R. § 404.1527(c)(3)** ("The better explanation a source provides for an opinion the more weight we will give that opinion.").  Therefore, the ALJ provided substantial evidence to reject Dr. Kamineni's opinion.

Kaczmarek also has argued that the ALJ did not provide substantial evidence for his RFC finding because he did not credit any expert opinions.  SSR 96-8p explains how an ALJ should assess a claimant's RFC at steps four and five of the sequential evaluation.  In a section entitled, "Narrative Discussion Requirements," SSR 96-8p specifically spells out what is needed in the ALJ's RFC analysis.  This section of the Ruling provides

> [t]he RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations).  In assessing RFC, the adjudicator must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis (i.e., 8 hours a day, for 5 days a week, or an equivalent work schedule), and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record.  The adjudicator must also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved.

SSR 96-8p (footnote omitted).  Thus, as explained in this section of the Ruling, there is a difference between what the ALJ must contemplate and what he must articulate in his written decision.  "The ALJ is not required to address every piece of evidence or testimony presented, but he must provide a 'logical bridge' between the evidence and his conclusions."  *Getch v. Astrue*, 539 F.3d 473, 480 (7th Cir. 2008) (quoting *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir.

2000)); *see Moore v. Colvin*, 743 F.3d 1118, 1123 (7th Cir. 2014). Although the ALJ does not need to discuss every piece of evidence, he cannot ignore evidence that undermines his ultimate conclusions. *Moore*, 743 F.3d at 1123 ("The ALJ must confront the evidence that does not support her conclusion and explain why that evidence was rejected.") (citing *Terry v. Astrue*, 580 F.3d 471, 477 (7th Cir. 2009); *Myles v. Astrue*, 582 F.3d 672, 678 (7th Cir. 2009); *Arnett v. Astrue*, 676 F.3d 586, 592 (7th Cir. 2012)). "A decision that lacks adequate discussion of the issues will be remanded." *Moore*, 743 F.3d at 1121.

Kaczmarek has claimed that the ALJ relied on his own lay impressions rather than expert opinion to find Kaczmarek not disabled. However, the ALJ did rely on an expert opinion to reach his conclusion. The ALJ explained why he accepted Dr. Shugart's opinion over Dr. Kamineni's opinion. (Tr. 17). He also noted the treatment Kaczmarek received after Dr. Shugart's opinion and explained that Dr. Shugart referred Kaczmarek for that treatment. Moreover, as discussed above, the ALJ did not err by rejecting Dr. Kamineni's opinion. Additionally, the ALJ reviewed the medical evidence including the opinions of Dr. Sands and Dr. Brill. Although the ALJ rejected their conclusion that Kaczmarek had no limitations, he reviewed their findings to explain the inconsistencies between Kaczmarek's claims and the objective medical evidence. However, because this matter is being remanded on a separate issue, the ALJ may further explain his RFC assessment on remand.

Next, Kaczmarek has argued that the ALJ's credibility determination was patently wrong. This court will sustain the ALJ's credibility determination unless it is "patently wrong" and not supported by the record. *Bates v. Colvin*, 736 F.3d 1093, 1098 (7th Cir. 2013); *Schmidt v. Astrue*, 496 F.3d 833, 843 (7th Cir. 2007); *Prochaska v. Barnhart*, 454 F.3d 731, 738 (7th Cir. 2006) ("Only if the trier of fact grounds his credibility finding in an observation or argument that

14

is unreasonable or unsupported . . . can the finding be reversed."). The ALJ's "unique position to observe a witness" entitles his opinion to great deference. *Nelson v. Apfel*, 131 F.3d 1228, 1237 (7th Cir. 1997); *Allord v. Barnhart*, 455 F.3d 818, 821 (7th Cir. 2006). However, if the ALJ does not make explicit findings and does not explain them "in a way that affords meaningful review," the ALJ's credibility determination is not entitled to deference. *Steele v. Barnhart*, 290 F.3d 936, 942 (7th Cir. 2002). Further, "when such determinations rest on objective factors or fundamental implausibilities rather than subjective considerations [such as a claimant's demeanor], appellate courts have greater freedom to review the ALJ's decision." *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000); *see Bates*, 736 F.3d at 1098.

The ALJ must determine a claimant's credibility only after considering all of the claimant's "symptoms, including pain, and the extent to which [the claimant's] symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence." **20 C.F.R. § 404.1529(a);** *Arnold v. Barnhart*, 473 F.3d 816, 823 (7th Cir. 2007) ("[S]ubjective complaints need not be accepted insofar as they clash with other, objective medical evidence in the record."); *Scheck v. Barnhart*, 357 F.3d 697, 703 (7th Cir. 2004). If the claimant's impairments reasonably could produce the symptoms of which the claimant is complaining, the ALJ must evaluate the intensity and persistence of the claimant's symptoms through consideration of the claimant's "medical history, the medical signs and laboratory findings, and statements from [the claimant, the claimant's] treating or examining physician or psychologist, or other persons about how [the claimant's] symptoms affect [the claimant]." **20 C.F.R. § 404.1529(c);** *see Schmidt v. Barnhart*, 395 F.3d 737, 746–47 (7th Cir. 2005) ("These regulations and cases, taken together, require an ALJ to articulate specific reasons for discounting a claimant's testimony as being less than credible, and preclude an ALJ from merely

15

ignoring the testimony or relying solely on a conflict between the objective medical evidence and the claimant's testimony as a basis for a negative credibility finding.").

Although a claimant's complaints of pain cannot be totally unsupported by the medical evidence, the ALJ may not make a credibility determination "solely on the basis of objective medical evidence." SSR 96-7p, at *1; *see* **Moore v. Colvin**, 743 F.3d 1118, 1125 (7th Cir. 2014) ("'[T]he ALJ cannot reject a claimant's testimony about limitations on her daily activities solely by stating that such testimony is unsupported by the medical evidence.'") (quoting *Indoranto*, 374 F.3d at 474); **Carradine v. Barnhart**, 360 F.3d 751, 754 (7th Cir. 2004) ("If pain is disabling, the fact that its source is purely psychological does not disentitle the applicant to benefits."). Rather, if the

> [c]laimant indicates that pain is a significant factor of his or her alleged inability to work, the ALJ must obtain detailed descriptions of the claimant's daily activities by directing specific inquiries about the pain and its effects to the claimant. She must investigate all avenues presented that relate to pain, including claimant's prior work record, information and observations by treating physicians, examining physicians, and third parties. Factors that must be considered include the nature and intensity of the claimant's pain, precipitation and aggravating factors, dosage and effectiveness of any pain medications, other treatment for relief of pain, functional restrictions, and the claimant's daily activities. (internal citations omitted).

**Luna v. Shalala**, 22 F.3d 687, 691 (7th Cir. 1994); *see* **Zurawski v. Halter**, 245 F.3d 881, 887-88 (7th Cir. 2001).

In addition, when the ALJ discounts the claimant's description of pain because it is inconsistent with the objective medical evidence, he must make more than "a single, conclusory statement . . . . The determination or decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to

16

the individual's statements and the reasons for that weight." SSR 96-7p, at *2; *see* **Minnick v. Colvin**, 775 F.3d 929, 937 (7th Cir. 2015) ("[A] failure to adequately explain his or her credibility finding by discussing specific reasons supported by the record is grounds for reversal.") (citations omitted); **Zurawski**, 245 F.3d at 887; **Diaz v. Chater**, 55 F.3d 300, 307-08 (7th Cir. 1995) (finding that the ALJ must articulate, at some minimum level, his analysis of the evidence). He must "build an accurate and logical bridge from the evidence to [his] conclusion." **Zurawski**, 245 F.3d at 887 (quoting **Clifford v. Apfel**, 227 F.3d 863, 872 (7th Cir. 2000)). A minor discrepancy, coupled with the ALJ's observations is sufficient to support a finding that the claimant was incredible. **Bates**, 736 F.3d at 1099. However, this must be weighed against the ALJ's duty to build the record and not to ignore a line of evidence that suggests a disability. **Bates**, 736 F.3d at 1099.

The ALJ provided five reasons to find Kaczmarek incredible, including the objective medical evidence, Kaczmarek's daily living activities, her application for unemployment benefits, her part-time work, and her criminal history. Kaczmarek has not argued that the ALJ erred by considering the above factors but has claimed that his negative inferences were flawed factually or legally. However, the Commissioner has argued that the ALJ properly considered the totality of the factors to find Kaczmarek incredible.

First, Kaczmarek has argued that the ALJ failed to explain how the objective medical evidence hurt her credibility. The ALJ indicated that there was no evidence of muscle atrophy, deficits in muscle strength, reflexes, or sensation, or a need to use an assistive device to ambulate. (Tr. 17). Apparently, the ALJ inferred that Kaczmarek's claims were not entirely credible because she did not exhibit the above signs. However, it is unclear how the ALJ determined that Kaczmarek should exhibit the above signs. *See* **Parker v. Colvin**, 2014 WL

17

6750047, at *10 (N.D. Ind. Dec. 1, 2014) (finding an ALJ's credibility determination patently wrong when he failed to explain why the missing physical manifestations were necessary); *Yousif v. Chater*, 901 F. Supp. 1377, 1385 (N.D. Ill. 1995) ("Nowhere in the record is there testimony by a doctor that the pain caused by [the claimant's] condition 'usually' gives rise to the physical manifestations that the ALJ found lacking."). "ALJs must not succumb to the temptation to play doctor and make their own independent medical findings." **Rohan v. Chater**, 98 F.3d 966, 970 (7th Cir. 1996). The ALJ did not provide testimony from a doctor that Kaczmarek should have exhibited the above signs. Therefore, he cannot discount her credibility for failing to exhibit them.

The ALJ also reviewed the objective medical evidence and noted that doctors reported normal findings, despite Kaczmarek's claims of significant limitations. However, he did not provide specific reasons for his credibility finding. Rather, he simply discounted Kaczmarek's claims of pain because he found them inconsistent with the objective medical evidence. The ALJ must make more than a single conclusory statement to explain his credibility finding. Therefore, the ALJ did not discuss this reason adequately.

Second, Kaczmarek has claimed that the ALJ improperly considered her daily living activities. The ALJ found that Kaczmarek could "engage in a rather full range of activities," which he found inconsistent with her claim of disability. He then listed Kaczmarek's daily living activities, including doing some laundry, watching movies, cooking once per week, caring for her personal needs, playing on the computer, reading, and occasionally picking her grandchildren up from school. (Tr. 21–22). However, the ALJ failed to explain how those activities were inconsistent with Kaczmarek's claims or the objective medical evidence. *See **Jelinek v. Astrue**,* 662 F.3d 805, 812 (7th Cir. 2011) ("[A]n ALJ may consider a claimant's daily activities when

18

assessing credibility, but ALJs must explain perceived inconsistencies between a claimant's activities and the medical evidence."). Additionally, he failed to note that her activities were accompanied by pain or that some activities caused her hands to go numb. Therefore, the ALJ failed to explain adequately how Kaczmarek's daily living activities affected her credibility adversely.

Third, Kaczmarek has indicated that the ALJ erred by drawing negative inferences from her receipt of unemployment benefits. "It is not inappropriate to consider a claimant's unemployment income in a credibility determination." ***Miocic v. Astrue***, 890 F. Supp. 2d 1046, 1059 (N.D. Ill. 2012) (citing ***Schmidt v. Barnhart***, 395 F.3d at 745–46). However, "it is error to find a claimant unreliable simply because of [her] receipt of unemployment benefits." ***Howard v. Colvin***, 2015 WL 1268297, at *9 (N.D. Ind. Mar. 18, 2015) (citing ***Richards v. Astrue***, 370 F. App'x 727, 732 (7th Cir. 2010)). "A desperate person might force herself to work—or in this case, certify that she is able to work—but that does not necessarily mean she is not disabled." ***Richards***, 370 F. App'x at 730 (citations omitted).

It is not clear that the ALJ asked Kaczmarek why she sought unemployment benefits. Additionally, the ALJ did not explain why Kaczmarek's receipt of unemployment benefits affected her credibility. Rather, the ALJ simply discredited her credibility for receiving unemployment benefits without inquiring further into the situation. Although the ALJ could consider Kaczmarek's unemployment benefits, he failed to build a logical bridge from her receipt of the benefits to his credibility determination.

Fourth, Kaczmarek has alleged that the ALJ erred by mischaracterizing her prior work history. The ALJ found Kaczmarek incredible because she worked part-time after the alleged onset date. He acknowledged that her work was limited and did not exceed the substantial

gainful activity limit. However, the ALJ concluded "it suggests that the claimant is not at [sic] limited as she and her daughter alleged." (Tr. 18). The ALJ did not indicate that she only worked four hours because she tired easily and had pain while stocking and shelving. (Tr. 86–87). Similar to Kaczmarek's receipt of unemployment benefits, the ALJ failed to explain how her part-time work was inconsistent with her allegations. *See **Richards***, 370 F. App'x at 730 (citations omitted).

Finally, Kaczmarek has argued that the ALJ failed to consider her criminal history properly. The ALJ discredited Kaczmarek's credibility because she was convicted and imprisoned for dealing methamphetamines from 2002 through 2004 and for possessing stolen property from February 2012 through November 2012. The ALJ failed to explain why Kaczmarek's prior criminal history made her less credible. *See **Hanson v. Astrue***, 2011 WL 1356946, at * 14 (E.D. Wis. Apr. 9, 2011) (citing **Federal Rule of Evidence 609**). The ALJ did not indicate whether her crimes were dishonest by nature. Additionally, he did not note or discuss that Kaczmarek admitted her criminal history at the hearing and during the application process.

Based on the above findings, the ALJ failed to build an accurate and logical bridge from the evidence to his credibility determination. Therefore, his credibility determination was patently wrong and requires remand. The ALJ may further explain his credibility findings on remand.

Based on the foregoing reasons, the decision of the Commissioner is **REMANDED** for further proceedings consistent with this Order.

ENTERED this 21st day of August, 2015.

/s/ Andrew P. Rodovich
United States Magistrate Judge